| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| Crystle Lindsey (SBN 281944)<br>GHIDOTTI \| BERGER, LLP<br>1920 Old Tustin Avenue<br>Santa Ana, CA 92705<br>Phone: (949) 427-2010<br>Fax: (949) 427-2732<br>Email: clindsey@ghidottiberger.com<br><br>☐ *Individual appearing without attorney*<br>☒ *Attorney for:* U.S. Bank Trust, N.A., solely as Trustees | |

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES DIVISION**

| In re: | |
|---|---|
| LAPEER 160 LLC<br><br>Debtor(s). | CASE NO.: 2:26-bk-13288-BB<br>CHAPTER: 11<br><br>**NOTICE OF MOTION FOR:**<br><br>MOTION OF SECURED CREDITORS FOR ORDER DISMISSING CHAPTER 11 CASE PURSUANT TO 11 U.S.C. § 1112(b); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF<br><br>(***Specify name of Motion***)<br><br>DATE: 08/26/2026<br>TIME: 10:00 am<br>COURTROOM: 1539<br>PLACE: United States Bankruptcy Court<br>255 E. Temple Street<br>Los Angeles, CA 90012 |

1. TO (*specify name*): Debtor, Office of the United States Trustee, and All Creditors and Interested Parties

2. NOTICE IS HEREBY GIVEN that on the following date and time and in the indicated courtroom, Movant in the above-captioned matter will move this court for an Order granting the relief sought as set forth in the Motion and accompanying supporting documents served and filed herewith. Said Motion is based upon the grounds set forth in the attached Motion and accompanying documents.

3. **Your rights may be affected**. You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)

4. **Deadline for Opposition Papers:** This Motion is being heard on regular notice pursuant to LBR 9013-1. If you wish to oppose this Motion, you must file a written response with the court and serve a copy of it upon the Movant or Movant's attorney at the address set forth above no less than fourteen (14) days prior to the above hearing date. If you fail to file a written response to this Motion within such time period, the court may treat such failure as a waiver of your right to oppose the Motion and may grant the requested relief.

5. **Hearing Date Obtained Pursuant to Judge's Self-Calendaring Procedure:** The undersigned hereby verifies that the above hearing date and time were available for this type of Motion according to the judge's self-calendaring procedures.

Date: 08/05/2026

GHIDOTTI | BERGER, LLP
Printed name of law firm

/s/ Crystle Lindsey
Signature

Crystle Lindsey
Printed name of attorney

Crystle Lindsey (SBN 281944)
GHIDOTTI | BERGER, LLP
1920 Old Tustin Avenue
Santa Ana, CA 92705
Phone: (949) 427-2010
Fax: (949) 427-2732
Email: clindsey@ghidottiberger.com

Attorneys for Secured Creditors, U.S. Bank Trust, National Association, as Trustees for Ranch Annex Series VI Trust and LB-Treehouse Series VI Trust

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA – LOS ANGELES DIVISION**

In re:

LAPEER 160 LLC,

Debtor.

Case No.: 2:26-bk-13288-BB

Chapter 11

**MOTION OF SECURED CREDITORS FOR ORDER DISMISSING CHAPTER 11 CASE PURSUANT TO 11 U.S.C. § 1112(b); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

*Filed concurrently with:*

1. *Notice of Hearing;*
2. *Request for Judicial Notice;*
3. *Declaration of Authorized Representative; and*
4. *Declaration of Crystle Lindsey*

Hearing:
Date: August 26, 2026
Time: 10:00 a.m.
Crtrm.: 1539

**TO THE HONORABLE COURT, DEBTOR AND ITS ATTORNEY OF RECORD, THE OFFICE OF THE UNITED STATES TRUSTEE, AND ALL CREDITORS:**

Secured creditors U.S. Bank Trust, National Association, not in its individual capacity but solely as Trustee for Ranch Annex Series VI Trust, and U.S. Bank Trust, National Association, not in its individual capacity but solely as Trustee for LB-Treehouse Series VI Trust (collectively, "Movants"), through their counsel of record, move for an order: (1) dismissing this Chapter 11 case for cause under 11 U.S.C. § 1112(b); and (2) barring Debtor from refiling for 180 days under 11 U.S.C. § 349(a) (the "Motion").

The Motion is based on the accompanying Memorandum of Points and Authorities; the concurrently filed Notice of Hearing, Declaration of Authorized Representative of Fay Servicing, LLC, Declaration of Crystle Lindsey, and Request for Judicial Notice; all pleadings and papers on file in this case; and any further evidence or argument the Court may consider at or before the hearing.

DATED: August 5, 2026

Respectfully submitted,

GHIDOTTI | BERGER, LLP

By: */s/ Crystle Lindsey*
Crystle Lindsey
*Attorneys for Movants*
U.S. Bank Trust, National Association, as Trustee for Ranch Annex Series VI Trust and LB-Treehouse Series VI Trust

## TABLE OF CONTENTS


**I. INTRODUCTION** .......... 7

**II. FACTUAL BACKGROUND** .......... 8

A. The Property and the Loans. .......... 8

B. Default and Foreclosure. .......... 8

C. The Eve-of-Foreclosure Petition. .......... 9

D. Debtor’s Inaccurate Schedules and Failure to Give Notice. .......... 9

E. Debtor Has No Income and No Path to Reorganization. .......... 11

F. Unpaid and Accruing Property Taxes. .......... 11

G. The Debt and the Absence of Net Equity. .......... 12

H. The Markowitz Affiliate Filings. .......... 12

**III. LEGAL STANDARD** .......... 13

**IV. LEGAL ARGUMENT** .......... 14

A. The Petition Was Filed in Bad Faith. .......... 14

1. Debtor Filed Minutes Before the Scheduled Foreclosure Sales Without the Means to Reorganize. .......... 14

2. Debtor’s Post-Petition Conduct Confirms the Absence of a Genuine Reorganization. .......... 15

3. Debtor Failed to Notify Its Principal Secured Creditors. .......... 16

4. The Filing Follows a Pattern of Failed Cases by Commonly Managed Affiliates. .......... 16

B. Cause Exists Because the Estate Is Suffering Continuing Loss and There Is No Reasonable Likelihood of Rehabilitation. .......... 17

1. The Estate Is Suffering Continuing Loss and Diminution. .......... 17

2. There Is No Reasonable Likelihood of Rehabilitation. .......... 18

3. Debtor Cannot Confirm a Plan Over Movants' Objection. .......... 19

C. Debtor's Failure to Pay Post-Petition Taxes Provides Additional Cause. .......... 19

D. Dismissal Is in the Best Interests of Creditors and the Estate. .......... 20

1. There Is No Equity in the Property That Could Be Liquidated for the Benefit of Unsecured Creditors. ....20
2. Conversion or Appointment of a Trustee Would Add Expense Without Creating Value. ....22
3. The Unusual-Circumstances Exception Does Not Apply. ....23
4. Dismissal Restores the Appropriate State-Law Remedies. ....23
5. A 180-Day Refiling Bar Is Warranted. ....23

**V. CONCLUSION** ....24

# TABLE OF AUTHORITIES

## CASES

*In re Albany Partners, Ltd.*, 749 F.2d 670 (11th Cir. 1984) .......... 15

*In re Baroni*, 36 F.4th 958 (9th Cir. 2022) .......... 13, 14

*In re Creekside Senior Apartments, L.P.*, 489 B.R. 51 (6th Cir. BAP 2013) .......... 17, 18, 23

*In re Hassen Imports Partnership*, 2013 WL 4428508 (9th Cir. BAP Aug. 19, 2013) .......... 17, 18

*In re Keeley & Grabanski Land Partnership*, 460 B.R. 520 (Bankr. D.N.D. 2011) .......... 20

*Leavitt v. Soto (In re Leavitt)*, 171 F.3d 1219 (9th Cir. 1999) .......... 23

*In re Mense*, 509 B.R. 269 (Bankr. C.D. Cal. 2014) .......... 18

*Legal Service Bureau, Inc. v. Orange County Bail Bonds, Inc. (In re Orange County Bail Bonds, Inc.)*, 638 B.R. 137 (9th Cir. BAP 2022) .......... 17

*St. Paul Self Storage Ltd. Partnership v. Port Authority of St. Paul (In re St. Paul Self Storage Ltd. Partnership)*, 185 B.R. 580 (9th Cir. BAP 1995) .......... 14, 15, 16

*In re Sunnyland Farms, Inc.*, 517 B.R. 263 (Bankr. D.N.M. 2014) .......... 20

## FEDERAL STATUTES

11 U.S.C. § 101(51B) .......... 10, 13

11 U.S.C. § 301(b) .......... 20

11 U.S.C. § 349(a) .......... 8, 23, 24

11 U.S.C. § 507(a)(8) .......... 19

11 U.S.C. § 1104(a) .......... 13

11 U.S.C. § 1112(b) .......... 7, 8, 13, 14, 17, 20, 23, 24

11 U.S.C. § 1123(a)(1) .......... 19

11 U.S.C. § 1129(a)(10) .......... 19

11 U.S.C. § 1129(a)(11) .......... 19

## STATE STATUTES

Cal. Rev. & Tax. Code § 4103(a)(1) .......... 12

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

This Chapter 11 case was filed to stop foreclosure, not to reorganize a viable business. Debtor's petition was entered on the docket at 10:39 a.m. on April 6, 2026, twenty-one minutes before trustee's sales of four condominium units were scheduled to begin. It was the sixth Chapter 11 case in five months by commonly managed Markowitz entities. None of the five prior cases produced a confirmed plan. Three have been dismissed, including one with a 180-day refiling bar; one was converted to Chapter 7; and one remains pending. This case is the sixth.

Nearly four months later, Debtor has no business, employees, income, financing, plan, or disclosure statement. It has paid no debt service or property taxes. It also omitted Movants and Fay from its schedules and creditor matrix and failed to notify them of the case for seventy-eight days, despite Movants holding more than $31.8 million in liens against substantially all estate property.

The estate continues to deteriorate. Interest accrues on the eleven Loans secured by property of the estate at approximately $226,000 per month, while unpaid taxes and penalties accrue as senior liens. The only valuation evidence shows $33.24 million in value against $31.88 million in debt. Six-percent costs of sale exceed that spread by more than $637,000 before taxes, penalties, and continuing interest. There is no net realizable equity for unsecured creditors.

Debtor's proposed exit strategies are not viable. Reversing post-petition sales that Movants agree conveyed no title would generate no revenue, and Debtor has produced no commitment, agreement, or term sheet from its unidentified proposed investor. Neither proposal would cure the defaults, provide adequate protection, or support a confirmable plan.

Cause therefore exists under 11 U.S.C. § 1112(b) because the petition was filed in bad faith, the estate is suffering continuing loss with no reasonable likelihood of rehabilitation under section 1112(b)(4)(A), and Debtor has failed timely to pay post-petition taxes under

section 1112(b)(4)(I). Dismissal, not conversion, best serves creditors and the estate because a trustee would inherit encumbered property with no income, estate funds, or net realizable equity while adding administrative expense.

Movants respectfully request dismissal with a 180-day bar against refiling under 11 U.S.C. § 349(a).

## II. FACTUAL BACKGROUND

### A. **The Property and the Loans**.

Debtor is a California limited liability company formed to own and operate a condominium project located at 160 N. La Peer Drive, Beverly Hills, California (the "Property"). The Property consists of sixteen separately titled condominium units (the "Units"). Debtor's sole member is MLM Grandchildren's Irrevocable Trustee Three, and Marvin Markowitz manages Debtor. [RJN Ex. 8 (Dkt. 14 at 2).]

In October 2024, Debtor obtained thirteen loans originated by Greenbox Loans, Inc. (collectively, the "Loans"). Each Loan is secured by a first-position deed of trust encumbering an individual Unit. [Fay Decl. ¶ 4.] Movants hold the thirteen Loans. U.S. Bank Trust, National Association, as Trustee for Ranch Annex Series VI Trust holds the Loans secured by seven Units, and U.S. Bank Trust, National Association, as Trustee for LB-Treehouse Series VI Trust holds the Loans secured by six Units. The assignments vesting those interests in Movants were recorded between February 17 and July 7, 2026. [RJN Exs. 1, 2; Fay Decl. ¶ 5.] Fay Servicing, LLC ("Fay") services the Loans. [Fay Decl. ¶ 1.]

Units 301, 303, and 305 are encumbered by deeds of trust held by another lender and are not at issue in this Motion. [RJN Ex. 7.]

### B. **Default and Foreclosure**.

Debtor defaulted under each of the thirteen Loans and has made no payment on any Loan since the June 1, 2025 installment became due. [Fay Decl. ¶ 6.] Notices of Trustee's Sale were recorded against six Units between December 2025 and March 2026. [RJN Ex. 3; Fay Decl. ¶ 10.]

Unit 105 was sold at trustee's sale on January 21, 2026, and Unit 202 was sold at trustee's sale on March 9, 2026. In each instance, the foreclosing beneficiary was the successful bidder. [Fay Decl. ¶ 10.] Those Units are not property of the estate, as Debtor's own status reports confirm. [RJN Exs. 8, 12 (Dkt. 14 at 2; Dkt. 40 at 2).] Accordingly, the debt and valuation figures stated in this Motion are limited to the eleven Loans secured by Units that remain property of the estate.

The trustee's sales of the four other noticed Units, Units 103, 201, 302, and 405, were scheduled for April 6, 2026, beginning at 11:00 a.m. [Fay Decl. ¶ 11; RJN Ex. 3.] Thus, as of the petition date, eleven Units securing Movants' Loans remained property of the estate.

### C. <u>The Eve-of-Foreclosure Petition</u>.

Debtor filed its voluntary Chapter 11 petition on April 6, 2026. The petition was entered on the docket at 10:39 a.m., twenty-one minutes before the scheduled trustee's sales. [RJN Ex. 5 (Dkt. 1).]

The foreclosure trustee proceeded with four sales that morning: Unit 201 at 11:10 a.m., Unit 103 at 11:13 a.m., Unit 405 at 11:16 a.m., and Unit 302 at 11:19 a.m. Movant was unaware of the filing and did not instruct the trustee to postpone the sales. [Fay Decl. ¶ 11.] Debtor acknowledged this chronology in both its May and July status reports, stating: "Prior to the case filing, two of the sixteen units were foreclosed. Four were foreclosed post-petition in violation of the automatic stay." [RJN Exs. 8, 12 (Dkt. 14 at 2; Dkt. 40 at 2).]

Movants do not contend that the four post-petition sales conveyed title and do not seek retroactive annulment of the automatic stay. Accordingly, those four Units remain property of the estate. Debtor nevertheless identifies "negotiat[ing] reversal of the sale of . . . all foreclosed units" as its proposed exit strategy, encompassing both the four post-petition sales and the two completed prepetition sales. [RJN Ex. 8 (Dkt. 14 at 2).]

### D. <u>Debtor's Inaccurate Schedules and Failure to Give Notice</u>.

Debtor filed its schedules under penalty of perjury on April 20, 2026. The schedules identify neither Movants nor Fay. Schedule D instead lists ten secured claims attributed to "Shellpoint" and "SPS Select Portfolio Servicing, Inc.," neither of which holds or services the

Loans. [RJN Ex. 7; Fay Decl. ¶¶ 1, 5, 12.] Of the ten Units identified in Schedule D, three, Units 301, 303, and 305, are not collateral for Movants' Loans.

Schedule D omits six Units entirely: Units 103, 105, 201, 202, 302, and 405. Each was collateral for a Loan held by LB-Treehouse Series VI Trust. [RJN Ex. 7.] Although Units 105 and 202 were sold before the petition date, the other four omitted Units remain property of the estate and secure Loans totaling $11,196,866.83. [Fay Decl. ¶ 8.]

Schedule D reports total secured debt of $24,753,646.14. By comparison, the aggregate payoff on the eleven Loans secured by property of the estate was $31,883,385.03 as of July 10, 2026. [RJN Ex. 7; Fay Decl. ¶ 8.]

Debtor's petition also describes its business in terms that its other filings do not support. At Item 7A, Debtor checked "None of the above," thereby declining to identify itself as a single asset real estate debtor as defined in 11 U.S.C. § 101(51B). [RJN Ex. 5 (Dkt. 1 at 2).] Debtor's other filings describe an entity that owns a single condominium project at one address, conducts no other business, has no employees, and generates no revenue. [RJN Exs. 7, 8, 9-11.] Debtor has not explained this discrepancy. Movants do not seek a designation under section 101(51B) through this Motion.

Debtor also failed to notify Movants that it had commenced this case. Fay is designated to receive notices concerning the Loans on Movants' behalf, and its records reflect that it received no notice of the case from Debtor or any other source before June 23, 2026. [Fay Decl. ¶ 12.]

Movants instead learned of the bankruptcy through the related receivership action concerning their collateral, U.S. Bank Trust Company, N.A. v. La Peer 160, LLC, Los Angeles Superior Court Case No. 26STCV18205. That action was filed on June 10, 2026. [Lindsey Decl. ¶ 6.]

An ex parte application for appointment of a receiver was set for hearing on June 24, 2026, at 8:30 a.m. [Id.] On June 23, 2026, the day before the hearing, Debtor's counsel filed a Notice of Stay of Proceedings in the receivership action. [Lindsey Decl. ¶ 6, Ex. A.] Receivership counsel then notified Movants' bankruptcy counsel of the filing. [Id.] Movants

therefore learned of the case seventy-eight days after the petition date and only after Debtor invoked the automatic stay in the receivership action.

**E. Debtor Has No Income and No Path to Reorganization.**

Debtor's Monthly Operating Reports for April, May, and June 2026 each report zero income, zero operating receipts, and zero employees. [RJN Exs. 9-11.] Debtor likewise acknowledges that the Property "is not currently generating cash" and that Debtor "is not generating any rental income." [RJN Ex. 8 (Dkt. 14 at 3).]

The Property nevertheless continues to incur utility expenses. In May 2026, Debtor paid $649.60 to SoCalGas and $1,925.68 to Southern California Edison. [RJN Ex. 10.] That month, the debtor-in-possession account began with a zero balance, received a single $3,000 "remote capture deposit" of undisclosed origin as its only credit, and ended with a balance of $477.94. [Id.]

Debtor's April, May, and June balance sheets are identical to the dollar. Each reports $35,501,276 in assets, $24,975,514 in liabilities, and $10,525,763 in equity, despite continuing utility expenses, accruing interest, and increasing tax obligations. [RJN Exs. 9-11.] Each report also reflects $0 in post-petition taxes payable. [Id.] The May Monthly Operating Report omits both a statement of operations and a statement of capital assets. [RJN Ex. 10.]

Debtor proposed to file and serve a plan and disclosure statement by August 4, 2026. [RJN Ex. 8 (Dkt. 14).] That deadline has passed. As of August 5, 2026, the docket reflected no plan, disclosure statement, motion to use cash collateral, motion to obtain credit, application to employ a broker, or application to employ an appraiser. [RJN Ex. 6; Lindsey Decl. ¶ 5.]

**F. Unpaid and Accruing Property Taxes.**

The eleven Units securing Movants' Loans that remain property of the estate have unpaid secured property taxes for the 2024–2025 supplemental assessments and the 2025–2026 tax year. [Fay Decl. ¶ 14.] Those eleven Units account for $112,292.02 in secured taxes billed and unpaid, exclusive of penalties and costs. Of that amount, $107,948.25 had come

due and remained unpaid as of the filing of this Motion. The remaining balance consists of the second installment of the supplemental assessments, which does not become delinquent until October 31, 2026. [*Id.*]

Each tax statement reflects a prior delinquency. The penalty date for both installments of the 2025–2026 annual taxes was changed to May 31, 2026, and the first installment of the 2024–2025 supplemental assessments became delinquent on June 30, 2026. Each of those dates fell after the petition date, yet Debtor's Monthly Operating Reports reflect no tax payments. [RJN Exs. 4, 9-11.]

Defaulted taxes accrue redemption penalties at the rate of 1.5 percent per month, or eighteen percent per annum. Cal. Rev. & Tax. Code § 4103(a)(1). Every tax that is a lien on real property has priority over all other liens on the property, regardless of the time of their creation, including the deeds of trust securing Movants' Loans. *Id.* § 2192.1.

**G. The Debt and the Absence of Net Equity.**

As of July 10, 2026, the aggregate payoff on the eleven Loans secured by property of the estate was $31,883,385.03, with interest continuing to accrue at approximately $7,529.01 per day. [Fay Decl. ¶ 8.] Broker price opinions prepared by ClearCapital, each based on an exterior drive-by inspection and having an effective date of July 7, 2026, value those eleven Units at an aggregate $33,240,000. [Fay Decl. ¶ 17 & Ex. D.]

The difference between the aggregate value and debt is $1,356,614.97. Assuming costs of sale of six percent, those costs would total approximately $1,994,400, exceeding the gross spread by more than $637,000 before accounting for unpaid property taxes and continuing interest accrual. Four Units, Units 401, 402, 403, and 405, are individually underwater, with aggregate payoffs exceeding their values by approximately $979,437. [Fay Decl. ¶ 19.]

**H. The Markowitz Affiliate Filings.**

Since December 2025, single-asset entities managed or controlled by Debtor's principal, Marvin Markowitz, have filed seven Chapter 11 cases in this District, including this case:

1. *In re Marmar Bedford LLC*, Case No. 2:25-bk-20775-BB, filed December 3, 2025; converted to Chapter 7 on March 11, 2026, on the United States Trustee's section 1112(b) motion; closed July 7, 2026, without a discharge. [RJN Ex. 16.]

2. *In re Lenmar Robertson, LLC*, Case No. 2:25-bk-21079-BB, filed December 10, 2025 and entered on the docket at 10:19 a.m., eleven minutes before a foreclosure sale scheduled for 10:30 a.m.; dismissed March 12, 2026. [RJN Ex. 14.]

3. *In re 1047 Corning LLC*, Case No. 2:25-bk-21233-BB, filed December 15, 2025; designated a single asset real estate case under 11 U.S.C. § 101(51B) on May 22, 2026; secured creditors obtained relief from stay; and the Court dismissed the case on August 5, 2026. [RJN Ex. 17.]

4. *In re MLM Oregon, LLC*, Case No. 2:26-bk-12319-BB, filed March 11, 2026; remains pending. [RJN Ex. 18.]

5. *In re Lenmar Robertson, LLC*, Case No. 2:26-bk-13080-BB, filed March 31, 2026; dismissed June 1, 2026, with a 180-day bar against refiling under any chapter. [RJN Ex. 15.]

6. *In re Lapeer 160 LLC*, Case No. 2:26-bk-13288-BB, filed April 6, 2026, twenty-one minutes before the scheduled foreclosure sales.

7. *In re Marmar Bedford LLC*, Case No. 2:26-bk-17207-BB, filed July 21, 2026; remains pending. [RJN Ex. 19; Lindsey Decl. ¶ 4.]

No affiliated case has resulted in a confirmed plan. The resolved cases ended in dismissal or conversion, and the secured creditors in 1047 Corning obtained relief from stay.

## III. LEGAL STANDARD

Under section 1112(b), the Court shall convert or dismiss a Chapter 11 case, whichever is in the best interests of creditors and the estate, for cause, unless the Court determines that the appointment of a trustee or examiner under section 1104(a) is in those interests. 11 U.S.C. § 1112(b)(1). Movants bear the initial burden of establishing cause by a preponderance of the evidence. *In re Baroni*, 36 F.4th 958, 965–66 (9th Cir. 2022).

Section 1112(b)(4) provides a nonexclusive list of circumstances constituting cause. Those circumstances include "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation" and "failure timely to pay taxes owed after the date of the order for relief." 11 U.S.C. § 1112(b)(4)(A), (I). A petition filed in bad faith likewise constitutes cause for dismissal. *St. Paul Self Storage Ltd. Partnership v. Port Authority of St. Paul (In re St. Paul Self Storage Ltd. Partnership)*, 185 B.R. 580, 582 (9th Cir. BAP 1995).

Once cause is established, the Court must determine whether relief is in the best interests of creditors and the estate and, if so, which form of relief best serves those interests. *In re Baroni*, 36 F.4th at 965. Section 1112(b)(2) precludes conversion or dismissal only if the Court finds and specifically identifies unusual circumstances establishing that relief is not in the best interests of creditors and the estate, and the debtor or another party in interest establishes both: (1) a reasonable likelihood that a plan will be confirmed within a reasonable time; and (2) an act or omission for which a reasonable justification exists and that will be cured within a reasonable period fixed by the Court. 11 U.S.C. § 1112(b)(2). By its terms, that exception does not reach cause under section 1112(b)(4)(A).

## IV. LEGAL ARGUMENT

### A. <u>The Petition Was Filed in Bad Faith</u>.

A Chapter 11 petition filed in bad faith constitutes cause under section 1112(b). *In re St. Paul Self Storage*, 185 B.R. at 582–83. The Court determines good faith based on the totality of the circumstances. *Id*. Relevant considerations include whether the debtor has a single asset, an operating business, meaningful unsecured debt, cash flow sufficient to sustain a plan or provide adequate protection, and a dispute capable of resolution outside bankruptcy. *Id*. at 583. Those considerations point the same direction here. Debtor has a single asset, no operating business, and no cash flow with which to sustain a plan or provide adequate protection, and the dispute between Debtor and its secured lenders can be resolved through state-law foreclosure. Together, those circumstances establish that Debtor filed this case to stop foreclosure, not to pursue a feasible reorganization.

***1. Debtor Filed Minutes Before the Scheduled Foreclosure Sales Without the Means to Reorganize.***

Debtor's petition was entered on the docket at 10:39 a.m. on April 6, 2026, twenty-one minutes before the trustee's sales were scheduled to begin at 11:00 a.m. [RJN Exs. 3, 5.] At the time, Debtor had no income, employees, or operating business. It had made no payment on the Loans since June 2025 and lacked the funds to reinstate the Loans or provide adequate protection. Debtor invoked the automatic stay without any demonstrated ability to address the defaults that prompted the foreclosure sales. That is precisely the type of abuse the good-faith doctrine addresses. *In re Albany Partners, Ltd.*, 749 F.2d 670, 674 (11th Cir. 1984); see also *In re St. Paul Self Storage*, 185 B.R. at 583.

An eve-of-foreclosure filing is not dispositive by itself. Here, however, the petition served as a substitute for the reinstatement and adequate protection that Debtor could not provide.

***2. Debtor's Post-Petition Conduct Confirms the Absence of a Genuine Reorganization.***

Debtor's post-petition conduct confirms that the filing did not commence a genuine reorganization. Debtor has generated no income, paid no debt service or property taxes, and identified no committed source of financing. [RJN Exs. 8, 12.] Its Monthly Operating Reports for April, May, and June 2026 reflect no employees, no operating receipts, and no business activity capable of funding a plan. [RJN Exs. 9-11.]

Debtor's principal stated exit strategy is to "negotiat[e] reversal of the sale of . . . all foreclosed units," including four post-petition sales that Movants agree did not convey title. [RJN Ex. 8.] That proposal resolves no disputed issue and provides no means to generate income, cure the defaults, protect Movants' collateral, or confirm a plan. Nearly four months into the case, Debtor has made no meaningful progress toward rehabilitation. [Lindsey Decl. ¶ 5.]

Debtor cannot avoid that conclusion by relying on its claimed equity. As discussed below, that equity does not exist. See Section IV.B.1, infra. Even if it did, the good-faith

inquiry turns on whether the debtor has an operating business and cash flow sufficient to sustain a plan or provide adequate protection, not on asserted equity in a single asset. *In re St. Paul Self Storage*, 185 B.R. at 583.

***3. Debtor Failed to Notify Its Principal Secured Creditors.***

Debtor also failed to notify Movants of the case. Its schedules and creditor matrix omitted both Movants and Fay, and Debtor allowed seventy-eight days to pass without notifying the creditors holding $31,883,385.03 in liens against the Units that remain property of the estate. [Fay Decl. ¶¶ 8, 12; RJN Ex. 7.]

Debtor disclosed the filing only when it needed to invoke the automatic stay to prevent the appointment of a receiver over the Units. [Lindsey Decl. ¶ 6, Ex. A.] A debtor genuinely seeking to reorganize would promptly identify and engage with the secured creditors whose collateral constitutes substantially all of the estate. Debtor instead excluded Movants from the case until the state-court proceedings required disclosure. That conduct is inconsistent with a good-faith effort to reorganize.

Debtor's disclosures were inaccurate in another respect. Debtor declined the single asset real estate description on its petition. See Section II.D, supra. That checkbox alone might be insignificant. Considered with the inaccurate schedules and the failure to give notice, it is part of a pattern of filings that obscured, rather than disclosed, Debtor's circumstances and the identities of the parties whose collateral comprises substantially all of the estate. [RJN Exs. 5, 7; Fay Decl. ¶¶ 8, 12.]

***4. The Filing Follows a Pattern of Failed Cases by Commonly Managed Affiliates.***

This case followed five other single-asset Chapter 11 cases filed in this District within five months by entities under common Markowitz management and operating from the same address. See Section II.H, supra. Each of those five cases came before this Court, and none resulted in a confirmed plan. [RJN Exs. 14-18.]

Although those proceedings involved separate debtors, their common management, common address, similar filing circumstances, and uniform inability to reorganize reinforce

the conclusion that this case is another effort to delay secured-creditor enforcement without a feasible restructuring.

Considered together, these circumstances establish that Debtor filed this case to obtain the automatic stay and delay enforcement, not to achieve a prompt and feasible reorganization. A disputed gross valuation provides neither operating income nor the funds necessary to pay taxes, provide adequate protection, or confirm a plan. The filing therefore constitutes cause under section 1112(b).

**B. <u>Cause Exists Because the Estate Is Suffering Continuing Loss and There Is No Reasonable Likelihood of Rehabilitation.</u>**

Section 1112(b)(4)(A) requires Movants to establish both “substantial or continuing loss to or diminution of the estate” and “the absence of a reasonable likelihood of rehabilitation.” *Legal Service Bureau, Inc. v. Orange County Bail Bonds, Inc. (In re Orange County Bail Bonds, Inc.)*, 638 B.R. 137, 150 (9th Cir. BAP 2022). Both elements are satisfied here.

***1. <u>The Estate Is Suffering Continuing Loss and Diminution</u>.***

A continuing loss may be established through negative post-petition cash flow or the accumulation of unpaid post-petition obligations that impair the estate and its creditors. *In re Creekside Senior Apartments, L.P.*, 489 B.R. 51, 61 (6th Cir. BAP 2013); see also *In re Hassen Imports Partnership*, 2013 WL 4428508, at *13–14 (9th Cir. BAP Aug. 19, 2013).

Debtor generates no income. See Section II.E, supra. The estate nevertheless incurs approximately $2,575 per month in utility expenses, while unpaid property taxes and penalties continue to accrue and the balance owed on Movants’ Loans increases by approximately $226,000 per month. [RJN Exs. 4, 9-11; Fay Decl. ¶ 8.] Debtor has funded even its limited utility expenses through a single $3,000 deposit of undisclosed origin rather than through operating revenue. [RJN Ex. 10.]

The valuation evidence confirms the estate’s continuing deterioration. As discussed in Section II.G, supra, estimated costs of sale and senior property-tax liens exceed the gross spread between value and debt, which therefore does not represent net realizable equity for

the estate. [Fay Decl. ¶¶ 8, 17, 19; RJN Ex. 4.]

Debtor has no operating income or committed capital with which to stop these losses. Its inability to satisfy ongoing obligations without speculative third-party funding establishes continuing diminution of the estate. *Creekside*, 489 B.R. at 61.

### *2. **There Is No Reasonable Likelihood of Rehabilitation.***

Rehabilitation requires more than the ability to propose a reorganization. It requires a reasonable prospect that the debtor's business can be restored to a stable and viable basis. *In re Mense*, 509 B.R. 269, 284–85 (Bankr. C.D. Cal. 2014); *Creekside*, L.P., 489 B.R. at 61. The question is whether Debtor's business prospects justify continuing the reorganization effort. *Hassen Imports*, 2013 WL 4428508, at *15.

They do not. Debtor has no operating business, employees, rental income, or recurring revenue. It has made no payment on the Loans since June 2025 and has identified no means to service the $31,883,385.03 secured by the eleven Units remaining in the estate, pay property taxes and carrying costs, or provide adequate protection. [Fay Decl. ¶¶ 6, 8; RJN Exs. 9-11.]

Debtor's proposed exit strategy is entirely speculative. It proposes to reverse four post-petition foreclosure sales that Movants agree did not convey title and to locate an unidentified joint-venture investor to purchase what Debtor claims is $15 million in equity. [RJN Ex. 8.] Nearly four months into the case, Debtor has produced no plan, disclosure statement, investor commitment, financing agreement, term sheet, or other evidence that either proposal is viable. [RJN Ex. 6; Lindsey Decl. ¶ 5.] Debtor first referenced the prospective investor in May 2026 and repeated the same proposal in July without identifying the investor, disclosing any terms, or producing a commitment. [RJN Exs. 8, 12.] An expectation of financing is not evidence of financing.

Reversing ineffective sales would generate no revenue and resolve no disputed issue. Nor do an unidentified investor and unsupported equity figure establish a viable path to rehabilitation. The available market data, the absence of income, the accumulating obligations, and the lack of committed financing establish that Debtor cannot be restored to

a stable and viable basis within a reasonable time.

### 3. ***<u>Debtor Cannot Confirm a Plan Over Movants' Objection</u>.***

Rehabilitation presupposes a confirmable plan. If a plan impairs any class, at least one impaired class must accept it, determined without counting any acceptance by an insider. 11 U.S.C. § 1129(a)(10). Debtor's schedules identify no realistic class capable of satisfying that requirement.

Movants hold $31,883,385.03 in Loans secured by the eleven Units remaining in the estate, and another lender holds deeds of trust against the other three Units. [RJN Ex. 7; Fay Decl. ¶ 8.] Schedule E/F lists $118,232.29 in priority tax claims and only $103,635.37 in general unsecured claims held by ten creditors. [RJN Ex. 7.] The priority tax claims are claims of a kind specified in section 507(a)(8) and are therefore not classified at all, 11 U.S.C. § 1123(a)(1), so they cannot supply the impaired accepting class required by section 1129(a)(10).

That leaves Movants, who oppose continuation of the case, and the small general unsecured class. One creditor in that class, Marmar Development, uses the same address Debtor identifies as its principal place of business, and its vote would be excluded to the extent it is an insider or affiliate. [RJN Exs. 5, 7.] More fundamentally, Debtor has no funds to support any plan. Its debtor-in-possession account began May 2026 with a zero balance, received one $3,000 deposit of undisclosed origin, and ended the month with $477.94. [RJN Ex. 10.]

Even if Debtor could obtain an impaired accepting class, it could not satisfy feasibility or cramdown requirements. See 11 U.S.C. § 1129(a)(11), (b). Debtor has no income, committed financing, or net realizable equity after costs of sale and senior tax liens. [Fay Decl. ¶¶ 8, 17, 19; RJN Exs. 4, 9-11.] It has filed no plan or disclosure statement and solicited no votes. [RJN Ex. 6; Lindsey Decl. ¶ 5.] Because Debtor cannot confirm a plan, there is no reasonable likelihood that it can be rehabilitated.

**C. Debtor's Failure to Pay Post-Petition Taxes Provides Additional Cause.**

Section 1112(b)(4)(I) identifies as cause the failure timely to pay taxes owed after the order for relief. The provision applies to taxes that become due after the order for relief; unpaid prepetition taxes are not part of the cause analysis. *In re Sunnyland Farms, Inc.*, 517 B.R. 263, 268 (Bankr. D.N.M. 2014). The commencement of Debtor's voluntary case on April 6, 2026, constituted the order for relief. 11 U.S.C. § 301(b).

As discussed in Section II.F, $107,948.25 in secured property taxes on the eleven Units remaining in the estate came due after April 6, 2026, and remains unpaid. [RJN Ex. 4.] Debtor has reported no accrual or payment of post-petition property taxes in any of its April, May, or June Monthly Operating Reports. Each report instead states that Debtor owes $0 in post-petition taxes. [RJN Exs. 9-11.]

Debtor has not explained when the taxes arose and has offered no evidence contradicting the county tax statements. When a debtor fails to explain when taxes arose and does not rebut the moving party's evidence, that failure supports a finding of cause. *In re Keeley & Grabanski Land Partnership*, 460 B.R. 520, 544 (Bankr. D.N.D. 2011). Debtor's failure to pay taxes that came due after the order for relief therefore constitutes cause under section 1112(b)(4)(I).

Regardless of whether section 1112(b)(4)(I) applies to every installment, the continuing accrual of taxes, penalties, and senior liens independently supports a finding of loss and diminution under section 1112(b)(4)(A).

**D. Dismissal Is in the Best Interests of Creditors and the Estate.**

Once cause is established, the Court must determine whether dismissal, conversion, or appointment of a trustee or examiner best serves the interests of creditors and the estate. *In re Baroni*, 36 F.4th at 965. Dismissal is the appropriate remedy here.

***1. There Is No Equity in the Property That Could Be Liquidated for the Benefit of Unsecured Creditors.***

Section 1112(b)(1) directs the Court to determine which form of relief best serves

creditors and the estate. On this record, the central question is whether the Property contains equity that could be liquidated for the benefit of unsecured creditors. It does not.

Substantially all of the estate's assets consist of encumbered real property. Debtor's schedules report only $1,276.31 in assets of every other kind combined, and its debtor-in-possession account held just $477.94 at the end of May 2026. [RJN Exs. 7, 10.]

On the only valuation evidence before the Court, discussed in Section II.G, supra, costs of sale exceed the gross spread between the value of the eleven Units and the debt they secure by more than $637,000. Senior secured property taxes of $112,292.02 prime the consensual liens, and four of the eleven Units are individually underwater by an aggregate of approximately $979,437. [Fay Decl. ¶¶ 14, 19; RJN Ex. 4.] The three other Units remaining in the estate are encumbered by another lender's deeds of trust in the scheduled amount of $7,109,951.32 and would be subject to the same costs of sale, senior tax liens, and carrying costs. [RJN Ex. 7.]

Debtor's asserted $10,525,763 in equity is not supported by a valuation opinion. It is merely the result of subtracting reported liabilities from reported assets, and the liabilities used in that calculation are materially understated. Debtor's reported liabilities of $24,975,514 consist of the $24,753,646.14 in secured claims listed on Schedule D plus the $221,867.66 in unsecured claims listed on Schedule E/F, carried onto its balance sheets without adjustment. [RJN Exs. 7, 9-11.]

Schedule D reports $17,643,694.82 in debt against the seven Units securing the Ranch Annex Loans, although $20,686,518.20 is actually owed on those Loans, understating that debt by $3,042,823.38. [RJN Ex. 7; Fay Decl. ¶¶ 5, 8.] Schedules A/B and D also omit Units 103, 201, 302, and 405 entirely, both as assets and as collateral, even though each remains property of the estate and together they secure Loans totaling $11,196,866.83. [RJN Ex. 7; Fay Decl. ¶ 8.] Debtor's balance sheets therefore account for only ten of the fourteen Units remaining in the estate and understate the debt secured by seven of those ten Units.

Debtor has offered no competent valuation evidence to the contrary. Its status reports assert that the fourteen Units not sold before the petition date are worth $50,000,000 "per appraisals," but Debtor attached no appraisal, identified no appraiser, and has never applied to employ one. [RJN Exs. 6, 8, 12; Lindsey Decl. ¶ 5.]

The consequence for unsecured creditors is straightforward. Debtor scheduled $221,867.66 in unsecured claims, including $118,232.29 owed to taxing authorities. [RJN Ex. 7.] There is no equity from which those claims could be paid. Conversion would merely add a trustee's administrative expenses without creating a distribution for unsecured creditors.

### 2. ***__Conversion or Appointment of a Trustee Would Add Expense Without Creating Value__.***

A Chapter 7 trustee would succeed to the estate's remaining Units, all of which are encumbered, in a case with no operating income and virtually no cash available to fund administration. For the reasons stated in Section IV.D.1, supra, there is no net realizable equity in Movants' collateral. [Fay Decl. ¶¶ 8, 17, 19; RJN Ex. 4.]

A trustee could not create income, equity, or financing that Debtor does not possess. Conversion would instead add trustee compensation and professional fees, delay state-law enforcement, and allow taxes, interest, and carrying costs to continue accruing. Appointment of a Chapter 11 trustee or examiner would create the same problem: additional administrative expense without an operating business to manage or a viable restructuring to investigate.

This case is unlike Marmar Bedford, where this Court converted rather than dismissed. The debtor there owned a twenty-unit portfolio of income-producing real property that generated substantial rental income. A portion of that rental income constituted the secured creditor's cash collateral under recorded assignments of rents, and the secured creditor asked the Court to "dismiss or convert" the case. [RJN Ex. 16 (Marmar Dkt. 32).] A Chapter 7 trustee in that case would have succeeded to a functioning rental operation. Here, there are no rents, no cash collateral, and no operating revenue of any kind. Movants seek

dismissal.

***3. <u>The Unusual-Circumstances Exception Does Not Apply</u>.***

Section 1112(b)(2) does not prevent dismissal. Debtor cannot establish either element of the exception described in Section III, supra. 11 U.S.C. § 1112(b)(2). In particular, Debtor cannot demonstrate a reasonable likelihood that a plan will be confirmed within a reasonable time, for the reasons stated in Section IV.B.3, supra.

Moreover, the curable-act-or-omission component of section 1112(b)(2)(B) expressly excludes cause arising under section 1112(b)(4)(A). Because Movants have established continuing loss and the absence of a reasonable likelihood of rehabilitation, Debtor cannot avoid relief by promising to cure an omission or obtain financing at some later date. See *Creekside*, 489 B.R. at 63.

***4. <u>Dismissal Restores the Appropriate State-Law Remedies</u>.***

Dismissal will permit the secured creditors to resume their bargained-for state-law remedies, including nonjudicial foreclosure. It will also permit Debtor's principals to pursue a sale, refinancing, or recapitalization outside bankruptcy if the equity they claim is genuine. No collective bankruptcy process is necessary to accomplish those objectives.

Dismissal will avoid further administrative expense, prevent continued erosion of the collateral, and preserve the parties' substantive state-law rights. It therefore serves the interests of creditors and the estate better than conversion or appointment of a trustee or examiner.

***5. <u>A 180-Day Refiling Bar Is Warranted</u>.***

Section 349(a) permits the Court, for cause, to condition dismissal by restricting a debtor's ability to refile. See *Leavitt v. Soto (In re Leavitt)*, 171 F.3d 1219, 1223–24 (9th Cir. 1999) (holding in a Chapter 13 case that bad faith constitutes cause for dismissal with prejudice).

Cause exists here based on the totality of Debtor's conduct described in Section IV.A, supra. Considered together with the pattern of unsuccessful filings by commonly managed affiliates, that conduct warrants dismissal with a 180-day bar against refiling under section

349(a).

## V. CONCLUSION

For the foregoing reasons, Movants respectfully request that the Court enter an order:

1. Dismissing this Chapter 11 case for cause under 11 U.S.C. § 1112(b);
2. Imposing a 180-day bar to refiling under 11 U.S.C. § 349(a); and
3. Granting such other and further relief as the Court deems just and proper.

DATED: August 5, 2026

Respectfully submitted,

GHIDOTTI | BERGER, LLP

By: */s/ Crystle Lindsey*
Crystle Lindsey
*Attorneys for Movants*
U.S. Bank Trust, National Association, as Trustees for Ranch Annex Series VI Trust and LB-Treehouse Series VI Trust

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
1920 Old Tustin Avenue, Santa Ana, CA 92705

A true and correct copy of the foregoing document entitled: **NOTICE OF MOTION FOR** (*specify name of motion)*
MOTION FOR ORDER DISMISSING CHAPTER 11 CASE PURSUANT TO 11 U.S.C. § 1112(b); MEMORANDUM OF POINTS AND AUTHORITIES; SUPPORTING DECLARATIONS; AND REQUEST FOR JUDICIAL NOTICE
will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 08/05/2026 , I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Thomas B Ure - tom@urelawfirm.com; Shannon A Doyle - sdoyle@ghidottiberger.com, bknotifications@ghidottiberger;
David Samuel - David.S.Shevitz@usdoj.gov; United States Trustee (LA) - ustpregion16.la.ecf@usdoj.gov;
Tom R. Normandin - tnormandin@pnbd.com

☐ Service information continued on attached page

2. **SERVED BY UNITED STATES MAIL**:
On (*date*) 08/05/2026 , I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

See attached.

☒ Service information continued on attached page

3. **SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) 08/05/2026 , I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

Judge's Copy: Hon. Sheri Bluebond, 255 E. Temple Street, Suite 1534, Los Angeles, CA 90012

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 08/05/2026 | Salina Padilla | /s/ Salina Padilla |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

Label Matrix for local noticing
0973-2
Case 2:26-bk-13288-BB
Central District of California
Los Angeles
Wed Aug 5 16:11:22 PDT 2026

Lapeer 160 LLC
493 S Robertson Blvd.
Beverly Hills, CA 90211-3603

U.S. BANK TRUST COMPANY, N.A.
c/o Prenovost, Normandin, Dawe & Rocha
2122 North Broadway
Suite 200
Santa Ana, CA 92706-2614

Los Angeles Division
255 East Temple Street,
Los Angeles, CA 90012-3332

Best Roll-Up Door, Inc.
13202 Arctic Circle
Santa Fe Springs, CA 90670-5510

Blank Rome
1271 Avenue of the Americas
New York, NY 10020-1303

Cosco Fire Protection
1075 W. Lambert Rd. Bldg
Brea, CA 92821-2944

County of San Diego
9325 Hazard Way, Suite 100
San Diego, CA 92123-1217

FRANCHISE TAX BOARD
BANKRUPTCY SECTION MS A-340
PO Box 2952
SACRAMENTO, CA 95812-2952

Franchise Tax Board
PO Box 942857
Sacramento, CA 94257-0001

GP Cleaning
4137 Cudany St.
Huntington Park, CA 90255-6855

Interior Illusions Home
7335 Santa Monica Blvd.
Los Angeles, CA 90046-6615

Libby Markowitz
493 South Robertson
Beverly Hills, CA 90211-3603

(p)LOS ANGELES COUNTY TREASURER AND TAX COLLE
ATTN BANKRUPTCY UNIT
PO BOX 54110
LOS ANGELES CA 90054-0110

Marmar Development
493 S Robertson Blvd
Beverly Hills, CA 90211-3603

Miele, Inc
9 Independence Way
Princeton, NJ 08540-6621

SPS Select Portfolio Servicing, Inc
PO Box 65250
Salt Lake City, UT 84165-0250

Select Portfolio Servicing
P.O. Box 65250
Salt Lake City, UT 84165-0250

Shellpoint
P.O. Box 619063
Dallas, TX 75261-9063

Shellpoint
PO Box 819063
Dallas, TX 75381-9063

Sisera Technologies
PO Box 0717
Del Mar, CA 92014-0717

SoCalEdison - HM
P.O. Box 600
Rosemead, CA 91771-0001

SoCalGas
P.O. Box C
Monterey Park, CA 91756-0001

U.S. Bank Trust, National Association et al.
Fay Servicing, LLC
PO Box 814609
Dallas, TX 75381-4609

United States Trustee (LA)
915 Wilshire Blvd, Suite 1850
Los Angeles, CA 90017-3560

Thomas B Ure
Ure Law Firm
8280 Florence Avenue
Suite 200
Downey, CA 90240-3963

The preferred mailing address (p) above has been substituted for the following entity/entities as so specified by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

Los Angeles County Tax Collector
P.O. Box 54018
Los Angeles, CA 90054

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

(u)Courtesy NEF

(u)Thomas B. Ure

| | |
|---|---|
| End of Label Matrix | |
| Mailable recipients | 25 |
| Bypassed recipients | 2 |
| Total | 27 |